# Illinois Official Reports

## Appellate Court

---

### *In re L.J.S.*, 2018 IL App (3d) 180218

---

| | |
|---|---|
| Appellate Court Caption | *In re* L.J.S., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Richard S., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-18-0218 |
| Filed | September 13, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 16-JA-25; the Hon. Theodore G. Kutsunis, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Nate Nieman, of Rock Island, for appellant.<br><br>John L. McGehee, State's Attorney, of Rock Island (Patrick Delfino, David J. Robinson, and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Justices Holdridge and Schmidt concurred in the judgment and opinion. |

# OPINION

¶ 1    L.J.S. was adjudicated abused and neglected based on allegations that respondent, Richard S., sexually abused her. Afterward, the State filed a petition to terminate parental rights, claiming that Richard was an unfit parent because (1) he was depraved, (2) he failed to make reasonable efforts to correct the conditions that were the basis for L.J.S.'s removal, and (3) he failed to make reasonable progress toward the return of L.J.S. It also claimed that it was in L.J.S.'s best interest to terminate Richard's parental rights. The trial court found Richard unfit and, subsequently, terminated Richard's parental rights. Richard appealed the unfitness ruling. We affirm.

¶ 2                                                  FACTS

¶ 3    The State filed a petition for adjudication of wardship, claiming that L.J.S., born August 7, 2006, was neglected, abused, and dependent. The petition alleged that L.J.S.'s environment was injurious to her welfare because she was sexually abused by her father, Richard. Richard had been incarcerated in Rock Island County jail because he was charged with six counts of predatory sexual assault. L.J.S.'s mother, Dawn B., was not involved in L.J.S.'s life. The State also filed a petition for temporary custody.

¶ 4    In May 2016, Dawn stipulated to the allegations in the petition. In its adjudicatory order, the court granted the State's petition, finding that, based on the stipulation, there were sufficient facts to find L.J.S. had been abused. In June 2016, a dispositional hearing was held. Richard was not present; however, his attorney made his first appearance at the hearing. After the hearing, the court entered a dispositional order, adjudicating L.J.S. abused and neglected. It also granted the Department of Children and Family Services (DCFS) placement and custody of L.J.S. and ordered that visitation was at the discretion of DCFS and the Center for Youth and Family Solutions (CYFS). It stated that a service plan was appropriate and that DCFS must "develop and implement a new service plan in conformity of this Order."

¶ 5    In July 2016, the court entered a *nunc pro tunc* finding to support an adjudicatory order and a supplemental dispositional order, stating that, *inter alia*, Richard must (1) cooperate with services and service providers, (2) follow the "497 Client Service Plan" and sign necessary releases of information, (3) obtain and maintain appropriate housing and income, (4) participate in sex offender treatment, (5) complete integrated assessment, and (6) not have visitation with L.J.S. while he is incarcerated.

¶ 6    In December 2016, the first permanency review was held. The court found that Richard was not making reasonable efforts to correct the conditions that were the basis for L.J.S.'s removal and not making reasonable progress toward the return of L.J.S. The permanency order stated that the appropriate permanency goal was to return L.J.S. home within 12 months. A second permanency review was held in March 2017. Dawn submitted a final and irrevocable consent to adoption, and the trial court certified that her consent was knowing and voluntary. The court ruled that Richard was not making reasonable progress or reasonable efforts. In its written order, the court stated that the appropriate permanency goal was substitute care pending determination of termination of parental rights. During this time, Richard pled guilty to five counts of aggravated criminal sex abuse, four of which related to L.J.S., and was sentenced to five 48-month terms of probation, all to be served concurrently. As part of his

probation conditions, Richard was prohibited from having contact with L.J.S. He was released from jail on December 2, 2017.

¶ 7    The State filed a supplemental petition to terminate parental rights.[1] The State alleged that Richard was an unfit parent because (1) he was depraved under section 1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2016)); (2) he failed to make reasonable efforts to correct the conditions that were the basis for L.J.S.'s removal during the relevant nine-month period of June 23, 2016, through March 23, 2017, under section 1(D)(m)(i) of the Adoption Act (*id.* § 1(D)(m)(i)); and (3) he failed to make reasonable progress toward the return of L.J.S. during the relevant nine-month period of June 23, 2016, through March 23, 2017, under section 1(D)(m)(ii) of the Adoption Act (*id.* § 1(D)(m)(ii)). The State asserted as factual support for its allegations that Richard (1) pled guilty to five counts of aggravated criminal sex abuse, (2) failed to maintain appropriate employment or income while he was incarcerated, (3) failed to complete an integrated assessment, and (4) failed to communicate with DCFS about his participation in sex offender treatment or other services. The State also pled that it was in the best interest of L.J.S. that Richard's parental rights were terminated.

¶ 8    In August 2017, a parental fitness hearing was held. On direct examination, Kathie McAdams, caseworker for CYFS, testified that she had been L.J.S.'s caseworker for three months. She was not L.J.S.'s original caseworker but had been familiar with the earlier history of the case. When L.J.S. was adjudicated abused and neglected, Richard was incarcerated in Rock Island County jail awaiting charges for sexually abusing L.J.S. However, he was not in jail when McAdams was assigned to the case. While Richard was in jail, he was ordered to complete an integrated assessment. To her knowledge, Richard never attempted to coordinate and complete the integrated assessment or any other services. McAdams had no knowledge about the former caseworker's communication, if any, with Richard about completing the assessment. McAdams's first discussion with Richard about completing the assessment was on August 14, 2017. On that day, Richard told her that he had started receiving services at the Robert Young Center (Robert Young) after he had been released from jail. She was not able to verify his statement, however, because he would not sign a release. She had made two prior attempts to speak with him after receiving his contact information from his father, who came to McAdams's office and left her Richard's number. However, she had not made any effort to contact him before August 2017, and Richard never contacted her or, to her knowledge, the former caseworker. Richard was prohibited from visitation with L.J.S. because there had been a no-contact order. McAdams testified that, because of the no-contact order, he was not a return home option for L.J.S. Richard was living in Moline and receiving supplemental security income (SSI). In order for him to become a possible placement option for L.J.S., he would have to complete parenting classes and sex abuse classes and the no-contact order would need to be dismissed.

¶ 9    On cross-examination, McAdams stated that she had not told Richard that she was the new caseworker although it was common to do so. In order for Richard to complete the assessment he would have to coordinate with McAdams. Richard's case file stated that he was mentally delayed, and he told McAdams that he was delayed and "had trouble understanding some things." When she spoke with Richard on August 14, she asked him if he understood

---

[1]While the record refers to an original petition to terminate parental rights, we have not found such a petition in the record.

everything she told him and he did not seem confused. She took over the case at the end of May or beginning of June 2017. McAdams did not know if the former caseworker had been in contact with Richard or if she had made any attempt to coordinate the assessment with him. McAdams believed that Richard knew that CYFS was L.J.S.'s servicing agency because he would have received court documents from the agency through the jail or his attorney.

¶ 10     The court took judicial notice of L.J.S.'s birth certificate; a 13-page document detailing Richard's five-count charge of aggravated criminal sexual abuse to which he pled guilty; an amended order of protection; and a February 28, 2017, permanency hearing report. In the permanency report, Lela Donaldson, the former caseworker, stated that she had been unable to communicate with Richard while he was in jail "per his attorney." As a condition of his probation, Richard was ordered to complete sex offender treatment. He did not cooperate with CYFS to participate in services or inform the agency of the services he was participating in. Donaldson also stated that CYFS could not pursue reunification because the no-contact order prohibited Richard from having any contact with L.J.S. The agency planned to seek termination of parental rights. Richard submitted into evidence an updated criminal docket "as proof that [Richard] has put his past conduct behind him. There's no further evidence of any criminality from him."

¶ 11     On direct examination, Richard testified that he had been living in Moline, Illinois, for a month. He had previously lived by himself in Silvis, Illinois. He had been incarcerated for about 10 months in 2016 and was currently on probation for four years. He had not been in trouble since he was released from jail. While in jail, Richard was unable to attend parenting classes and sex offender treatment because the jail did not offer it. He got out of jail in December 2016 and started sex offender treatment in January 2017. He also had been seeing a doctor at the Robert Young for a "couple months now." He never had a job and his highest level of education was high school. He was currently on SSI because "I can't read and write that good." He understood that he had to complete sex offender treatment, but he did not know who to contact. The treatment was a two-year program. When he got out of jail, he did not know who his caseworker was. He was planning to appeal his criminal case.

¶ 12     On cross-examination, Richard explained that he did not contact CYFS because "I didn't think it would be—I didn't think I would have to do that." He believed he would get his daughter back by doing things his attorney told him. Aside from the sex offender treatment and seeking psychiatric care at Robert Young, Richard did not attempt to participate in other services. He acknowledged that he did not sign a release to allow CYFS to review his treatment because "I didn't think it's necessary." He never missed a sex offender class. He believed that he would get L.J.S. back by completing sex offender treatment, seeing his doctor, and completing other classes. He was willing to complete other classes he might later be assigned if necessary.

¶ 13     The court requested that both parties submit written arguments with supporting precedent. Based on *In re S.H.*, 284 Ill. App. 3d 392 (1996), the court determined that the four counts of criminal sexual abuse related to L.J.S., of which Richard was convicted, constituted four separate acts sufficient to support a presumption of depravity. Next, the court stated that "The burden shifted then to the respondent father to prove to this court by clear and convincing evidence that he was not depraved." It held that Richard did not overcome the presumption of depravity and, thus, found him unfit. It further ruled that there was sufficient evidence to show that Richard did not make reasonable efforts to correct the conditions that were the basis for

L.J.S.'s removal and did not make reasonable progress toward the return of L.J.S. The court explained:

> "As to the allegation of lack of effort—reasonable effort—the court report filed by the former caseworker on February 28, 2017, clearly indicated that [Richard] had not communicated with the caseworker during his incarceration. He did not engage in any services, to that worker's knowledge, including sex offender treatment as ordered in the felony case for criminal sexual abuse charges, as indicated above. The caseworker also testified that she had not heard from [Richard] until shortly before the fitness hearing. She further testified that [Richard] had not engaged in any services that she was aware of, except for [Richard's] self report that he had begun sex offender treatment. When questioned about why he had not engaged in services or communications with the caseworker, [Richard] stated that he did not think he needed to communicate with the worker or provide verification for any of the services he was engaged in. When further questioned as to why he thought [Richard] could provide no answer other than to restate his belief. [Richard] clearly knew the expectations of the agency and frankly of this court and he constantly appeared in court while in custody and thereafter and had been repeatedly admonished by this court to cooperate with the Department of Children and Family Services, the designated agency with—and with the services contained in the service plan.
>
> So, therefore, the court believes that the State has proven by clear and convincing evidence that the father failed to make reasonable efforts during the applicable time periods of June 23, 2016 to March 23, 2017.
>
> As to the allegation of lack of reasonable progress towards the return of the child, the former caseworker's report and the testimony provided by the case worker clearly demonstrated that [Richard], in all reality, was and is unable to make that progress. Certainly [Richard] could have made no reasonable progress towards returning the child to his care while he was incarcerated. Post incarceration [Richard] is serving 48 months' probation which commenced December 2, 2016. Paragraph 12 of that probation order specifically prohibits [Richard] from having contact with the minor. Because of these impediments which this court believes are of the making of the father himself, the court is of the opinion that the State has proven, again for the same time period, that [Richard] failed to make reasonable progress toward the return of the child. Therefore, my ruling is today that the State has proven its case and that [Richard] is deemed unfit by this court as supported by clear and convincing evidence on the record."

¶ 14    In April 2018, a best interest hearing was held. The court found that it was in L.J.S.'s best interest to terminate Richard's parental rights. Richard filed a notice of appeal on April 18, and the court entered its written order on April 27.[2] Richard only appealed the unfitness ruling.

---

[2]This court has jurisdiction to hear this case. See Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017) ("A notice of appeal filed after the court announces a decision, but before the entry of the judgment or order, is treated as filed on the date of and after the entry of the judgment or order.").

¶ 15                                                    ANALYSIS

¶ 16       First, Richard argues that the trial court erred when it determined he was unfit based on depravity because (1) the State's evidence only showed that petitioner had one conviction; (2) the trial court erred when it determined that petitioner had to rebut the presumption of depravity by clear and convincing evidence; (3) even if the State met the presumption, it was rebutted because (a) he had no criminal history since his release from jail and (b) he was currently enrolled in sex offender classes and receiving psychiatric care at Robert Young.

¶ 17       Section 1(D) provides the grounds on which the trial court may find a parent unfit. 750 ILCS 50/1(D) (West 2016). One ground is that the parent is depraved. *Id.* § 1(D)(i). Section 1(D)(i) states, in relevant part:

> "There is a rebuttable presumption that a parent is depraved if the parent has been criminally convicted of at least 3 felonies under the laws of this State or any other state, or under federal law, or the criminal laws of any United States territory; and at least one of these convictions took place within 5 years of the filing of the petition or motion seeking termination of parental rights." *Id.*

¶ 18       In Illinois, the term "depravity" means " 'an inherent deficiency of moral sense and rectitude.' " *In re A.M.*, 358 Ill. App. 3d 247, 253 (2005) (quoting *Stalder v. Stone*, 412 Ill. 488, 498 (1952)). The State shows depravity by establishing that respondent has a " 'deficiency' in moral sense and either an inability or an unwillingness to conform to accepted morality." (Internal quotation marks omitted.) *Id.* (quoting *In re J.A.*, 316 Ill. App. 3d 553, 561 (2000)). "Where the presumption of depravity is rebuttable, the 'parent is still able to present evidence showing that, despite his convictions, he is not depraved.' " *Id.* (quoting *J.A.*, 316 Ill. App. 3d at 562). If respondent presents evidence contradicting the presumption, the presumption is removed and the issue is determined based on the evidence presented. *J.A.*, 316 Ill. App. 3d at 562. The burden of proving by clear and convincing evidence that the respondent is depraved remains with the State. *A.M.*, 358 Ill. App. 3d at 254. The trial court's determination that a parent is unfit will not be reversed unless it is against the manifest weight of the evidence. *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005).

¶ 19       The parties dispute whether the State had proven Richard had at least three felony convictions in accordance with section 1(D)(i). Specifically, Richard claims that the four counts of aggravated sexual abuse were a part of one guilty plea that resulted in one conviction, and the State alleges that each count constituted a separate conviction. The trial court determined that, under *S.H.*, the counts against Richard constituted four separate convictions. In *S.H.*, the State filed a petition for termination of parental rights against respondent on the basis of depravity. *S.H.*, 284 Ill. App. 3d at 393. At the hearing on the petition, the State's only evidence was respondent's conviction of two counts of aggravated criminal sexual assault, and the trial court held that the State presented a *prima facie* case that respondent was depraved. *Id.* at 394-95. Affirming the trial court's decision, the Fourth District determined that "a parent who commits [sexual] acts like these upon his or her own child is subject to being found unfit due to depravity based solely upon that conduct." (Emphasis omitted.) *Id.* at 400.

¶ 20       We find *S.H.* distinguishable from this case. The court in *S.H.* relied on a prior version of section 1(D)(i) that only required a showing of depravity. The prior version stated:

> "D. 'Unfit person' means any person whom the court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption. The grounds of unfitness are any one or more of the following:

- 6 -

(i) Depravity." 750 ILCS 50/1(D)(i) (West 1996).

The current version of section 1(D)(i) that this court must rely on mandates, in relevant part, that a rebuttable presumption is only established if the State proves the respondent was convicted of at least three felonies within five years of the filing of the termination petition. Therefore, we decline to follow the trial court's reasoning.

¶ 21    However, we can affirm the trial court's decision on any basis in the record (*People v. Campos*, 349 Ill. App. 3d 172, 177 (2004)), and we believe the record shows that Richard had at least five felony convictions within five years of the filing of the State's petition. A criminal history data sheet appearing in the record of exhibits shows there were five separate charges for aggravated criminal sex abuse (Class 2 felony), Richard pled guilty to each charge in December 2016, and he was placed on probation for each charge to be served concurrently. Therefore, we find that the State successfully raised the statutory rebuttable presumption that Richard was depraved.

¶ 22    Both parties acknowledge that the trial court erred at the next step when it required Richard to rebut the presumption by proving by clear and convincing evidence that he was not depraved. We agree that this was error. This court has determined that, under section 1(D)(i), a respondent need only provide some contrary evidence to rebut the presumption. See *In re P.J.*, 2018 IL App (3d) 170539, ¶ 14. Richard tendered some evidence of rehabilitation, rebutting the presumption and requiring the State to prove depravity by clear and convincing evidence. The trial court did not require the State to meet that burden. The application of the appropriate standard of proof is fundamental for persons facing involuntary termination of their parental rights. *Id.* ¶ 15. Thus, we find the State has failed to prove that depravity is a proper basis for unfitness in this case. The State has, however, raised three bases for finding Richard unfit. Proof of any one of those grounds is sufficient to support a finding of unfitness. *In re C.W.*, 199 Ill. 2d 198, 210 (2002). We, therefore, consider the State's next contention—that Richard failed to make reasonable efforts to correct the conditions that were the basis for L.J.S.'s removal under section 1(D)(m)(i).

¶ 23    Richard counters that the trial court erred when it found him unfit on that basis. Specifically, Richard alleges that he made reasonable efforts because (1) he began sex offender treatment in January 2017, (2) he began seeing a doctor at Robert Young, (3) he had not been in trouble since his release from jail in December 2016, and (4) he was attending all his sex offender treatment classes.

¶ 24    Section 1(D)(m)(i) states that a court may enter a finding of unfitness if a parent fails to "make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent during any 9-month period following the adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act of 1987 or dependent minor under Section 2-4 of that Act." 750 ILCS 50/1(D)(m)(i) (West 2016). "Reasonable efforts relate to the goal of correcting the conditions that caused the removal of the child from the parent [citation], and are judged by a subjective standard based upon the amount of effort that is reasonable for a particular person." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1066-67 (2006). The reviewing court must determine whether the parent has made "earnest and conscientious" strides toward correcting the conditions that led to the removal of the minor. *In re B.S.*, 317 Ill. App. 3d 650, 658 (2000), *overruled on other grounds by In re R.C.*, 195 Ill. 2d 291 (2001). "Parental deficiencies collateral to the conditions that were the basis for the child's removal,

even if serious enough to prevent the return of the child, are outside the scope of this inquiry and are therefore not relevant." *In re C.M.*, 305 Ill. App. 3d 154, 164 (1999).

¶ 25 The evidence reveals that Richard failed to make reasonable efforts to correct the conditions that were the basis for L.J.S.'s removal. The February 28, 2017, report shows that Richard did not communicate with CYFS while he was in jail. The report also stated that Richard had not cooperated with CYFS to participate in services. Although Richard testified that he had participated in sex offender treatment, the trial court relied on McAdams's testimony that, to her knowledge, defendant did not engage in any services because Richard refused to sign any releases to allow her to verify his participation. *In re T.D.*, 268 Ill. App. 3d 239, 245 (1994) ("Reviewing courts accord the trial court's findings great deference in recognition of its unique ability to assess the credibility of witnesses."). The trial court reasonably inferred that Richard's statement that he did not think he needed to communicate with the caseworker and his refusal to sign releases indicated his defiance of his obligation to comply with the service plan. See *id.* Despite Richard's testimony that he lived by himself in Silvis and, later, in Moline after he was released from prison and that he was receiving SSI, there is also no evidence that the housing or income were "appropriate" or that any servicing agency was notified about this information. There is similarly no evidence that he completed his integrated assessment during the relevant nine-month period. Thus, we find that the trial court's ruling that Richard failed to make reasonable efforts during the applicable period was not against the manifest weight of the evidence. Because that finding is adequate basis for the court's determination that Richard was unfit, there is no need to address whether Richard made reasonable progress toward the return of L.J.S. See *In re C.W.*, 199 Ill. 2d at 210.

¶ 26                                    CONCLUSION
¶ 27 The judgment of the circuit court of Will County is affirmed.

¶ 28 Affirmed.