NOTICE

Decision filed 09/26/23. The text of this decision may be changed or corrected prior to the filing of a Petiion for Rehearing or the disposition of the same.

2023 IL App (5th) 230278-U

NOS. 5-23-0278, 5-23-0279 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* F.S. and E.S., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Williamson County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | Nos. 18-JA-72, 18-JA-73 |
| | ) | |
| Daniel S., | ) | Honorable |
| | ) | Amanda Byassee Gott, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Cates and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's finding that the respondent father was unfit because he failed to make reasonable efforts was not against the manifest weight of the evidence. Also, the trial court's finding that it was in the minor children's best interests to terminate the respondent father's parental rights was not against the manifest weight of the evidence. Accordingly, we affirm the court's termination of the respondent father's parental rights.

¶ 2    The respondent, Daniel S., was found to be an unfit parent and his parental rights were terminated as to his minor children, E.S. and F.S., by the circuit court of Williamson

1

County. Daniel S. appeals the fitness finding made on March 24, 2023, and the order terminating his parental rights, which was also entered that same day.[1]

¶ 3　Termination of parental rights proceedings are governed by the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2022)) and the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2022)). *In re D.T.*, 212 Ill. 2d 347, 352 (2004). A petition to terminate parental rights is filed under section 2-29 of the Juvenile Court Act, which delineates a two-step process to terminate parental rights involuntarily. 705 ILCS 405/2-29(2) (West 2022). The State must first establish, by clear and convincing evidence, that the parent is an unfit person under one or more of the grounds enumerated in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). 705 ILCS 405/2-29(2), (4) (West 2022); *In re Gwynne P.*, 215 Ill. 2d 340, 349 (2005).

¶ 4　A finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re C.N.*, 196 Ill. 2d 181, 208 (2001). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent. *Id.* The circuit court's finding of unfitness is given great deference because it has the best opportunity to make factual findings and credibility assessments. *In re M.J.*, 314 Ill. App. 3d 649, 655 (2000). This court, therefore, will not reweigh the evidence or reassess the credibility of the witnesses. *In re M.A.*, 325 Ill. App. 3d 387, 391 (2001). Each case concerning parental fitness is unique and must be decided on the particular

---

[1]Pursuant to Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018), except for good cause shown, this court is to issue a decision within 150 days after the filing of the notice of appeal. Accordingly, Rule 311(a)(5) requires the decision in this case to be filed on or before September 18, 2023. In order to give this case the attention it deserves, this court finds it necessary to file this disposition past the due date, and we find good cause to issue our decision outside the 150-day timeframe.

facts and circumstances presented. *In re Gwynne P.*, 215 Ill. 2d at 354. In addition, because each of the statutory grounds of unfitness is independent, the court's finding may be affirmed where the evidence supports a finding of unfitness as to any one of the alleged grounds. *In re C.W.*, 199 Ill. 2d 198, 217 (2002).

¶ 5 Here, the trial court found Daniel S. was unfit in that he failed to make reasonable efforts to correct the conditions that were the basis for the children's removal during any nine-month period following adjudication. In making this decision, the court noted that there were many nine-month periods which it could choose from, but, looking at the nine-month periods following Daniel S.'s psychological assessment in March 2022, he had not made reasonable efforts.

¶ 6 Reasonable efforts relate to the goal of correcting the conditions that caused the child's removal and are judged by a subjective standard based upon the amount of effort that is reasonable for a particular person. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1066-67 (2006). For reasonable efforts, the circuit court must determine whether the parent has made earnest and conscientious efforts toward correcting the conditions that led to the removal of the minor child from the home. *In re L.J.S.,* 2018 IL App (3d) 180218, ¶ 24. Parental deficiencies collateral to the conditions that were the basis for the child's removal, even if serious enough to prevent the child's return, are outside the scope of this inquiry and are not relevant. *Id.*

¶ 7 If the circuit court finds a parent to be unfit, the cause proceeds for the court to determine whether it is in the best interest of the child for the parent's rights to be terminated. 705 ILCS 405/2-29(2) (West 2022); *In re M.J.*, 314 Ill. App. 3d 649, 655

3

(2000). At this stage of the proceedings, the focus of the court shifts to the best interests of the child and away from the rights of the parent. *In re Julian K.*, 2012 IL App (1st) 112841, ¶ 80. "[T]he parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d at 364. A finding that termination of parental rights is in the child's best interest will not be reversed unless it is contrary to the manifest weight of the evidence. *In re C.M.*, 319 Ill. App. 3d 344, 360 (2001).

¶ 8 In reaching a best-interests determination, the circuit court must consider, within the context of the child's age and developmental needs, the following factors: (1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural, and religious backgrounds and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child. *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 52; see also 705 ILCS 405/1-3(4.05) (West 2022).

¶ 9 Other important factors include the nature and length of the child's relationship with the present caretaker and the effect that a change of placement would have upon the emotional and psychological well-being of the child. *In re Violetta B.*, 210 Ill. App. 3d 521, 534 (1991). The circuit court is not required to articulate any specific rationale for

its decision, and, on review, we may affirm the circuit court's decision without relying on any basis used by the circuit court. *In re Tiffany M.*, 353 Ill. App. 3d 883, 893 (2004).

¶ 10    Regarding the fitness findings here, Daniel S. contends that he made reasonable efforts where he obtained stable employment and appropriate housing; he was an integral part of the children's lives; he was consistent with visits; and the evidence presented related to the reasonableness of his progress, which was not an alleged fitness ground, and did not relate to his reasonable efforts to correct the conditions that led to the children's removal from the home. Daniel S. also argued that the conditions that led to the children's removal from the home was neglect and abuse inflicted by his then-wife, *i.e.*, F.S.'s exposure to drugs while Jennifer S. was pregnant with her. He further argued that the court's statements that it was not concerned about the children having contact with him implied that he was not unfit.

¶ 11    The State filed the petition for adjudication of wardship based on Jennifer S., the children's mother and Daniel S.'s then-wife, and Daniel S. violating a safety plan that was put into place by the Illinois Department of Children and Family Services. The safety plan was implemented because F.S. was born with methadone and opiates in her meconium; F.S. had experienced drug withdrawal symptoms; Jennifer S. tested positive for opiates/methadone on the date of F.S.'s birth; and Jennifer S. had a history of drug use and admitted taking methadone during the pregnancy. Based on the plan agreed to by the parents, Jennifer S. was prohibited from having unsupervised contact with the children. However, on August 27, 2018, she was pulled over for speeding and had E.S. in the vehicle with her. Jennifer S. and Daniel S. both admitted to violating the safety

5

plan, and the children were taken into protective custody. Thus, the condition that caused the children's removal from the home was Jennifer S.'s continued drug use and Daniel S.'s parental decision to violate the safety plan that was implemented to protect the minor children by placing his young child in the sole care of a known drug user.

¶ 12    Initially, Daniel S.'s services included mental health, parenting education, substance abuse treatment, and obtaining and maintaining stable employment and appropriate housing. However, his services were later modified after he was given a cognitive impairment examination; after the defendant testified at the initial termination hearing, the State requested the examination because it suspected that the defendant had difficulty understanding his service plan obligations. He was then subsequently given a new service plan, and the service plan requirements consisted of mental health treatment, parenting education, and hands-on parenting services.

¶ 13    In finding that Daniel S. did not make reasonable efforts, the trial court noted that Daniel S. had not completed any of his service plans; this was not the first time that the permanency goal had changed to substitute care pending a determination on termination; there was a history of a lack of cooperation with the agency, cancelled and missed appointments and evaluations, and communication issues that were at least partly his fault; there was a period of time where he had no communication with the agency for several months and where he missed visits with the children; and despite being given a second chance to complete his services after the psychological evaluation, he continued to miss appointments and evaluations. The court also noted that, although there was concern that Daniel S. might not understand his service plan requirements, he had

indicated that he understood all of the requirements before the psychological evaluation, and the caseworker "bent over backwards" to make sure he understood them after the evaluation was completed.

¶ 14 The evidence presented regarding Daniel S.'s failure to cooperate and communicate with the agency, his delay in starting the necessary services that were essential to correcting the conditions that led to the minor children's removal, and his failure to complete parenting and mental health services, even after he was given a second chance to do so, support the court's finding that he had failed to make reasonable efforts. Although at the time of the termination hearing, he was engaged in services, he did not complete the mental health assessment or the hands-on parenting evaluation until January 2023, even though both services were included on his initial service plan in 2018. Thus, despite being given a second chance to complete his services, he delayed starting these services until a few months before the 2023 termination hearing, almost five years after the children were placed in care.

¶ 15 After considering all of the evidence, we find that Daniel S. failed to make earnest and conscientious strides toward correcting the conditions that led to the children's removal from the home, *i.e.*, his poor parental decision making that led him to disregard the safety plan that was put in place to protect his children from harm. We, therefore, conclude that the trial court's findings that he was an unfit parent because he failed to make reasonable efforts was not against the manifest weight of the evidence. Moreover, the court's statements about Daniel S. having continued contact with the children did not contradict its finding that he was unfit.

¶ 16 As to the best-interests finding, Daniel S. argued that the testimony presented indicated the children were glad to see him and called him daddy, he loved them and believed that family was very important, he had a solid knowledge of the children's basic developmental and physical needs and was able to provide for those needs, and the children were young enough to adjust to living with him. However, he does not allege, nor does the record indicate, that the trial court failed to consider the enumerated best-interests factors when making the best-interests determination.

¶ 17 In making the best-interests finding, the trial court noted that there was no question about Daniel S.'s love for his children. However, the court noted that F.S. had been in care from almost birth, and E.S. had been in care since he was 20 or 21 months old. The foster parents were relatives, they loved the children, and the children were significantly bonded with them as the children had been with them longer than the biological parents. The foster parents could financially support the children and met their emotional needs, they were healthy and thriving in the home, and the foster parents had other children that were involved in their lives. Although the court believed Daniel S. could parent the children with assistance, he had only recently started his parenting and mental health services and failed to complete these services in the five years that the children had been in care. After thoroughly reviewing the record on appeal, we conclude that it does not demonstrate that the trial court's decision as to the children's best interests was against the manifest weight of the evidence.

¶ 18 Thus, we affirm the circuit court's fitness finding and the order terminating Daniel S.'s parental rights.

¶ 19 Affirmed.