NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231441-U

NO. 4-23-1441

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 3, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* C.R., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Sangamon County |
|       Petitioner-Appellee, | ) | No. 19JA76 |
|       v. | ) | |
| Corey J., | ) | Honorable |
|       Respondent-Appellant). | ) | Karen S. Tharp, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Zenoff and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed the judgment of the trial court terminating respondent's parental rights where the court's unfitness finding was not against the manifest weight of the evidence.

¶ 2    In October 2022, the State filed a supplemental motion to terminate the parental rights of respondent, Corey J., to his minor child, C.R. (born in 2018). (The child's mother, Ambrosia R., is not a party to this appeal.) In September 2023, the trial court granted the State's petition and terminated respondent's parental rights.

¶ 3    On appeal, respondent contends the trial court erred in finding the State proved he was unfit by clear and convincing evidence. In particular, respondent argues the court erred in finding he failed to make reasonable efforts to correct the conditions that were the basis for the removal of C.R. and failed to make reasonable progress toward the return of C.R. to his care because the State did not assign him tasks to work toward meeting such goals. However,

respondent fails to address the court's finding he was depraved. That finding was not against the manifest weight of the evidence. Accordingly, we affirm.

¶ 4                                    I. BACKGROUND

¶ 5            In May 2019, the State filed a petition for adjudication of wardship, alleging C.R. was neglected under section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2018)), in that C.R.'s environment was injurious to his welfare. The State alleged Ambrosia used violence against others after being offered services by the Illinois Department of Children and Family Services (DCFS), and C.R.'s siblings had been adjudicated neglected due to Ambrosia's failure to make reasonable progress toward their return to her care. The State further alleged C.R. was not receiving the proper care and supervision necessary for his well-being. The trial court subsequently placed temporary custody and guardianship with DCFS.

¶ 6            On February 16, 2022, the State filed a motion for the termination of respondent's parental rights, and it filed a supplement motion on October 12, 2022. The motions alleged respondent was unfit (1) under section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2022)) because he failed to maintain a reasonable degree of interest, concern, or responsibility for C.R.'s welfare and (2) under sections 1(D)(m)(i) and (ii) of the Adoption Act (750 ILCS 50/1(D)(m)(i)-(ii) (West 2022)) for (a) failure to make reasonable efforts to correct the conditions that were the basis for the removal of C.R. during a nine-month period after the adjudication of neglect and (b) failure to make reasonable progress toward the return of C.R. to his care during a nine-month period after the adjudication of neglect. For the latter two allegations, the motions set forth nine-month periods of March 30, 2021, to December 30, 2021, and December 30, 2021, to September 30, 2022.

- 2 -

¶ 7 The State also alleged respondent was unfit under section 1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2022)) because he was depraved. The State alleged respondent was incarcerated and had been repeatedly incarcerated. 750 ILCS 50/1(D)(s) (West 2022). The State also alleged respondent had little to no contact with C.R. before his incarceration and his incarceration would prevent him from discharging his parental responsibilities in excess of two years after the filing of the motion for termination of parental rights. 750 ILCS 50/1(D)(r) (West 2022).

¶ 8 In August and September 2023, the trial court held a hearing on the termination motions. Various witnesses testified about the allegations against Ambrosia. As to respondent, Mary Sexton testified she was C.R.'s caseworker through Lutheran Child and Family Services (LCFS) from September 2019 until she left the agency approximately three years later. Respondent was incarcerated for a significant portion of the time she was acting as the caseworker. Sexton's involvement with respondent consisted of just a few phone calls. Sexton testified she tried to reach out to respondent but "never had any luck." She never discussed services with respondent because she could not contact him. Sexton tried contacting respondent's mother, who told Sexton she would have respondent return Sexton's calls, but he did not do so. Sexton indicated she might have also tried reaching out to the prison's contact person.

¶ 9 Patricia Dorsey, a child welfare worker with LCFS, testified she served as C.R.'s caseworker beginning in September 2022. Doresy testified respondent was incarcerated when she took over the case and remained incarcerated at the time of the hearing. She had not received any correspondence from respondent or had any conversations with him about services. Dorsey testified respondent had not done an assessment, so no services had never been identified

for him. However, she also stated respondent "does reach out to me via phone, but it's not a lot." Dorsey agreed the issue was a "communication problem" as opposed to "a lack of effort on his part."

¶ 10　　　　The trial court admitted into evidence documents pertaining to respondent's convictions. Those showed respondent pleaded guilty in June 2022 to unlawful possession of a weapon by a felon, a Class 2 felony, and was sentenced to seven years' incarceration. In December 2018, he pleaded guilty to Class 4 felony possession of a controlled substance and was sentenced to probation. That probation was revoked in January 2020, and respondent was sentenced to three years' incarceration. Also, in December 2018, respondent was convicted of Class 4 felony manufacture and delivery of cannabis and was sentenced to 24 months of probation, which was subsequently revoked. Finally, in February 2016, respondent pleaded guilty to Class 2 felony manufacture and delivery of a controlled substance and was sentenced to four years' incarceration.

¶ 11　　　　Respondent presented evidence he completed "Getting on the Fast Track" and "Parent Café" workshops in prison and was on the waiting list for "Geo Reentry Services" and the "Fatherhood Initiative Program." No testimony was given explaining the details of those programs.

¶ 12　　　　The trial court found respondent was depraved. The court found the timeline of respondent's felony convictions created a rebuttable presumption of depravity and nothing had been offered to sufficiently rebut the presumption. The court additionally found respondent failed to maintain a reasonable degree of interest, concern, or responsibility for C.R.'s welfare, failed to make reasonable efforts to correct the conditions that were the basis for the removal of C.R. during the second nine-month period alleged by the State, and failed to make reasonable

progress toward the return of C.R. to his care during the second nine-month period alleged by the State.

¶ 13     Following the finding of unfitness, the trial court held the best interest portion of the hearing. The State presented evidence C.R. was in a stable placement, with his needs being met. His placement was also able to provide permanency. The court found it was in the best interest of C.R. to terminate respondent's parental rights. Accordingly, the court entered an order terminating parental rights and changing the permanency goal to adoption.

¶ 14     This appeal followed.

¶ 15                    II. ANALYSIS

¶ 16     On appeal, respondent argues the trial court erred in finding the State proved he was unfit by clear and convincing evidence. Specifically, respondent argues the court erred in finding he failed to make reasonable efforts to correct the conditions that were the basis for the removal of C.R. and failed to make reasonable progress toward the return of C.R. to his care because the State failed to assign him tasks to work toward meeting such goals. Respondent does not argue the court erred when it found he was depraved. The State argues the court properly found respondent depraved, which was sufficient to find him unfit without addressing the other bases for the court's unfitness finding.

¶ 17     Under section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West 2022)), the involuntary termination of parental rights is a two-step process. First, the State must prove by clear and convincing evidence the parent is "unfit," as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). *In re Donald A.G.*, 221 Ill. 2d 234, 244, 850 N.E.2d 172, 177 (2006). If the State proves unfitness, it then must prove by a preponderance of

the evidence that termination of parental rights is in the best interest of the child. *In re D.T.*, 212 Ill. 2d 347, 363-66, 818 N.E.2d 1214, 1226-28 (2004).

¶ 18 A determination of parental unfitness involves factual findings and credibility determinations the trial court is in the best position to make because "the trial court's opportunity to view and evaluate the parties *** is superior." (Internal quotation marks omitted.) *In re M.I.*, 2016 IL 120232, ¶ 21, 77 N.E.3d 69. A trial court's finding of parental unfitness will not be reversed unless it is against the manifest weight of the evidence. *In re N.G.*, 2018 IL 121939, ¶ 29, 115 N.E.3d 102. A decision is against the manifest weight of the evidence only when the opposite conclusion is clearly apparent. *N.G.*, 2018 IL 121939, ¶ 29. "A parent's rights may be terminated if even a single alleged ground for unfitness is supported by clear and convincing evidence." *In re Gwynne P.*, 215 Ill. 2d 340, 349, 830 N.E.2d 508, 514 (2005).

¶ 19 We agree with the State the trial court's finding respondent was depraved was not against the manifest weight of the evidence and, thus, we need not address the remaining issues of fitness. Other than suggesting in his brief that "depravement is not a 'scarlet letter' that [respondent] has to wear the rest of his life" because he could complete services once released from prison, respondent has failed to argue or cite any authority suggesting the court erred when it found he was depraved. Under Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), the appellant brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages relied on." "A court of review is entitled to have the issues clearly defined with pertinent authority cited and cohesive arguments presented." *In re M.M.*, 2016 IL 119932, ¶ 30, 72 N.E.3d 260. An appellant may not foist onto the reviewing court the burden of argument and research. *Ramos v. Kewanee Hospital*, 2013 IL App (3d) 120001, ¶ 37, 992 N.E.2d 103. Arguments not properly developed in an appellant's opening

brief "are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 20 Here, respondent's failure to develop a well-reasoned argument regarding whether the trial court's unfitness finding on the basis of depravity was against the manifest weight of the evidence results in the forfeiture of the issue on appeal. See *In re H.D.*, 343 Ill. App. 3d 483, 489, 797 N.E.2d 1112, 1118 (2003) ("The principles of forfeiture apply to proceedings conducted pursuant to the Juvenile Court Act."). However, a reviewing court may address the merits of an argument that was forfeited when it relates to the termination of parental rights, as such an action affects a fundamental liberty interest. See *In re Tamera W.*, 2012 IL App (2d) 111131, ¶ 30, 968 N.E.2d 707. Forfeiture aside, respondent's argument fails on the merits.

¶ 21 Section 1(D)(i) of the Adoption Act provides that there is a rebuttable presumption a parent is depraved, and therefore unfit, if the parent "has been criminally convicted of at least 3 felonies under the laws of this State or any other state *** and at least one of these convictions took place within 5 years of the filing of the petition or motion seeking termination of parental rights." 750 ILCS 50/1(D)(i) (West 2022). "In Illinois, the term 'depravity' means an inherent deficiency of moral sense and rectitude. [Citation.] The State shows depravity by establishing that respondent has a deficiency in moral sense and either an inability or an unwillingness to conform to accepted morality." (Internal quotation marks omitted.) *In re L.J.S.*, 2018 IL App (3d) 180218, ¶ 18, 115 N.E.3d 1003.

¶ 22 Once the State makes a *prima facie* showing of depravity, the burden of rebutting the presumption of depravity rests on the parent. *In re J.A.*, 316 Ill. App. 3d 553, 562, 736 N.E.2d 678, 686 (2000). The parent must come forward with evidence "showing that, despite his convictions, he is not depraved." *J.A.*, 316 Ill. App. 3d at 562, 736 N.E.2d at 686.

"Rehabilitation can only be shown by a parent who, upon leaving prison, maintains a lifestyle suitable for parenting children safely." *In re J.V.*, 2018 IL App (1st) 171766, ¶ 183, 115 N.E.3d 1099. " 'The statutory ground of depravity requires the trier of fact to closely scrutinize the character and credibility of the parent[,] and the reviewing court will give such a determination deferential treatment.' " *J.V.*, 2018 IL App (1st) 171766, ¶ 184 (quoting *J.A.*, 316 Ill. App. 3d at 563, 736 N.E.2d at 687).

¶ 23          Here, the trial court's determination respondent was depraved was not against the manifest weight of the evidence. Respondent does not dispute he had more than three felony convictions, with at least one taking place within five years of the filing of the petition seeking termination of his parental rights. Thus, respondent was presumed depraved, and a finding of unfitness was justified unless he overcame the presumption by clear and convincing evidence. The court reasonably found he did not do so. As the court noted, respondent had been incarcerated for most of time C.R. was in the custody of DCFS. Respondent had not completed an assessment in order to be recommended for services by DCFS. While he independently took two workshops in prison, no explanation of the details of those programs was provided. Respondent was on the waiting list for two programs, but again, the details of those programs were not given, and nothing showed when or if he would be admitted to them. Thus, nothing meaningfully rebutted the presumption of depravity. Accordingly, the court's determination respondent was depraved was not against the manifest weight of the evidence, and the court properly found respondent unfit.

¶ 24          As previously noted, a parent's rights may be terminated when a single alleged ground for unfitness is supported by clear and convincing evidence. Accordingly, we need not, and do not, discuss other bases for the trial court's unfitness finding.

¶ 25       Respondent also does not argue the trial court erred in its ultimate determination that it was in the best interest of C.R. to terminate his parental rights. Thus, we also need not address that matter. However, we nevertheless note the facts do not demonstrate the court should have reached the opposite result in its findings. Accordingly, the court's determination was not against the manifest weight of the evidence.

¶ 26                              III. CONCLUSION

¶ 27       For the reasons stated, we affirm the trial court's judgment.

¶ 28       Affirmed.